UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES for the Use and Benefit
of SALOMON CONSTRUCTION AND
ROOFING, CORP. d/b/a SALOMON
ROOFING & CONSTRUCTION, a Florida
corporation,

      Plaintiff,

vs.

BES DESIGN/BUILD, LLC, a foreign
limited liability company, and AEGIS
SECURITY INSURANCE COMPANY, a
foreign corporation,

      Defendants.

_____

## COMPLAINT
_____

Salomon Construction and Roofing, Corp., doing business as Salomon Roofing &
Construction ("Salomon"), through counsel, sues BES Design/Build, LLC ("BES") and
Aegis Security Insurance Company ("Aegis") for damages and alleges:

### PARTIES/JURISDICTION/VENUE

1.    Salomon is a corporation organized and existing under the laws of the
state of Florida with its principal place of business in Florida.

2.    BES is a corporation organized and existing under the laws of the state of
Alabama and registered and doing business in Florida.

3.    Aegis is a limited liability company, organized and existing under the laws
of the state of Pennsylvania and registered and doing business as a surety in Florida.

4.     This Court has subject matter jurisdiction pursuant to 28 USC §1331 because the action arises out of a bond issued pursuant to 40 USC §3131.

5.     This Court has jurisdiction over state law claims by reason of this Court's pendent jurisdiction.

6.     Venue is proper in this Court pursuant to 40 USC §3133 in that the work performed by Salomon under the subcontract was performed in this district.

7.     All conditions precedent to the maintenance of this action, including the provision of all applicable notices and the expiration of all applicable waiting periods, have been performed, have been waived, or would have proven futile if performed.

## PRELIMINARY ALLEGATIONS, APPLICABLE TO ALL COUNTS

8.     In September 2016, the United States General Services Administration, PBS, Acquisition Division ("GSA") contracted BES ("Prime Contract") to replace the roof of the Claude Pepper Federal Office Building located at 51 SW 1st Avenue, Miami-Dade County, Florida ("Project").

9.     In October 2016, BES subcontracted Salomon ("Subcontract") to perform a portion of BES' scope of work at the Project. An accurate copy of the Subcontract is attached as **Exhibit 1**.

10.     Aegis furnished a payment bond ("Bond") for the Project which, among other things, guaranteed BES' payment obligations.  An accurate copy of the Bond is attached as **Exhibit 2**.

11.     Salomon furnished labor, material and services for the Project, and substantially completed the work it was required to perform pursuant to its Subcontract.

2

12.     Salomon has not been paid in full for its work, and is currently due $222,006.37, which does not include interest, attorneys' fees and costs.

13.     Salomon has demanded that BES remit payment of the $222,006.37 due to Salomon, but BES has refused.

14.     Salomon retained the undersigned counsel and has agreed to pay a reasonable fee for the prosecution of this action, which Salomon is entitled to recover pursuant to Article 15.4 of the Subcontract.

## COUNT I – BREACH OF CONTRACT (BES)

Salomon realleges and reasserts paragraphs 1 through 14 above as if fully set forth below.

15.     Salomon substantially performed its obligations pursuant to the terms of the Subcontract.

16.     Despite Salomon's performance, BES materially breached the Subcontract by:

      a.   failing to timely make payment to Salomon for all amounts due;

      b.   improperly terminating its Subcontract with Salomon; or

      c.   including work outside Salomon's Subcontract scope in the punch list.

17.     At the time BES terminated Salomon, BES was already in breach of the Subcontract due to its failure to pay Salomon.  Additionally, at the time of termination, Salomon already substantially completed its work and only minor punch list items remained. BES also failed to provide the requisite notices for terminating the Subcontract.

18.     By virtue of BES' material breaches of the Subcontract, Salomon sustained damages.

19.     BES' material breaches of the Subcontract excused further performance by Salomon under the Subcontract.

WHEREFORE, Salomon demands judgment against BES for damages in the amount of $222,006.37, interest, costs and attorneys' fees, which are recoverable under the contract, and such other relief as the Court deems appropriate.

### COUNT II – Breach of Miller Act Bond (BES and Aegis)

Salomon realleges and reasserts paragraphs 1 through 17 above as if fully set forth below.

20.     Aegis issued the Bond which guaranteed BES' payment obligations to Salomon on the Project.

21.     Salomon has a direct contractual relationship with BES, and is a claimant under the Bond.

22.     Salomon provided labor, material and services on behalf of BES at the Project and remains unpaid for same.  Despite demands for payment, which demand is made again herein, BES and Aegis have failed to pay Salomon.

23.     On January 11, 2018, Salomon issued a notice of non-payment to Aegis notifying them that an outstanding balance remained owed to Salomon in the amount of $222,006.37 for the work performed at the Project. An accurate copy of the notice of non-payment is attached as **Exhibit 3**.

24.     Salomon has taken all steps necessary to obtain protection under the Bond, and filed this action within one year of last furnishing labor, material and services for the Project.

4

WHEREFORE, Salomon demands judgment against BES and Aegis for damages in the amount of $222,006.37, interest, costs and attorneys' fees[1], which are recoverable under the Subcontract, and such other relief as the Court deems appropriate.

Dated this 20th day of March, 2018.

> SIEGFRIED,  RIVERA,  HYMAN,  LERNER,
> DE LA TORRE, MARS & SOBEL, P.A.
> Attorneys for Plaintiffs
> 201 Alhambra Circle, Suite 1100
> Coral Gables, Florida 33134
> Phone: (305) 442-3334
> Fax: (305) 443-3292
> Email:  ssobel@srhl-law.com
> Email: djovanov@srhl-law.com
>
>
> By: /s/ Stuart H. Sobel
> Stuart H. Sobel, Esq.
> Florida Bar Number:  262382
> Daniel Jovanov, Esq.
> Florida Bar Number:  106422

---

[1] *See United States v. Turner Constr. Co.,* 2017 WL 244066 (11th Cir. 2017) (reversing and remanding denial of motion for attorneys' fees to interpret contract provision at issue and award attorneys' fees if merited).

# EXHIBIT 1

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**BES DESIGN/BUILD**

BES Design Build, LLC
766 Middle Street
Fairhope, Alabama 36532-1534
Phone: (251) 990-5778

# Contract
# SC-16529-002

Project: 16529 - FL - Miami - Roof Replacement D/B Claude Pepper
Federal Building - GS-P-04-16-EX-7456
51 SW 1 Ave
Miami, Florida 33130

## Salomon Roofing and Construction

| DATE CREATED: | 10/28/2016 | | |
|---|---|---|---|
| CONTRACT COMPANY: | Salomon Roofing and Construction<br>689 West 26th Street<br>Hialeah,, Florida 33010<br>Phone: (305) 883-1656<br>Fax: (305) 883-5664 | CREATED BY: | Jack Grimes (BES Design Build, Charleston)<br>1941 Savage Road, Suite 300-E<br>Charleston, South Carolina 29407 |
| CONTRACT STATUS: | Out For Signature | EXECUTED: | No |
| START DATE: | 03/01/2016 | ESTIMATED COMPLETION DATE: | 08/01/2017 |
| SIGNED CONTRACT RECEIVED DATE: | | ACTUAL COMPLETION DATE: | |
| DEFAULT RETAINAGE: | | | |

**DESCRIPTION:**

Salomon Roofing and Construction Proposal #199237

Provide labor, materials and equipment to perform the following:
**SERVICE TO BE PROVIDED BY CONTRACTOR:**

1. Furnish and Install 20 Year Garland Modified Bitumen Roofing System
2. Furnish and Install Shop Fabricated Aluminum Metal System

Base Bid: $611,650.00
Alternate #3: $139,767.00
Sub Total: $751,417.00
Payment and Performance Bond: $15,033.00
Total: $766,450.00

Other alternatives available as required.

**INCLUSIONS:**
**INCLUSIONS:**
Certified Weekly Payroll – certifiedpayroll@besdesignbuild.com
Progress Payments are due to BESDB the 20th of each period, accountspayable@besdesignbuild.com
OHSA 10/30
Davis-Bacon Wages
Buy American Act
Bond
Taxes

**EXCLUSIONS:**

**ATTACHMENTS:**
Salomon Roofing and Construction SF1413 16529.pdf   Salomon Roofing Vendors List 16529.pdf

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|
| 1 | 07-00 00 - Thermal and Moisture Protection | Mobilization/ Reconstruction Coordination | Commitment | $ 10,000.00 |
| 2 | 07-00 00 - Thermal and Moisture Protection | Cranes/ Dumpsters/Security/Loading | Equipment | $ 60,000.00 |
| 3 | 07-00 00 - Thermal and Moisture Protection | Color Audio/ Video Cameras | Equipment | $ 20,000.00 |
| 4 | 07-00 00 - Thermal and Moisture Protection | Selective Demo | Sub Labor | $ 55,000.00 |
| 5 | 07-00 00 - Thermal and Moisture Protection | Coverboard & Base Ply | Sub Material | $ 100,000.00 |
| 6 | 07-00 00 - Thermal and Moisture Protection | Cap Sheet | Sub Material | $ 75,000.00 |

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

| 7 | 07-00 00 - Thermal and Moisture Protection | BUR Flashing | Sub Material | $ 15,000.00 |
|---|---|---|---|---|
| 8 | 07-00 00 - Thermal and Moisture Protection | Aluminum Flashing | Sub Material | $ 5,000.00 |
| 9 | 07-00 00 - Thermal and Moisture Protection | Coverboard and Base Ply Installation | Sub Labor | $ 180,000.00 |
| 10 | 07-00 00 - Thermal and Moisture Protection | Cap Sheet Installation | Sub Labor | $ 75,000.00 |
| 11 | 07-00 00 - Thermal and Moisture Protection | BUR Flashing Installation | Sub Labor | $ 15,000.00 |
| 12 | 07-00 00 - Thermal and Moisture Protection | Aluminum Flashing Installation | Sub Labor | $ 2,150.00 |
| 13 | 07-00 00 - Thermal and Moisture Protection | Selective Demo: Remover existing roof | Sub Labor | $ 26,150.00 |
| 14 | 07-00 00 - Thermal and Moisture Protection | Coverboard and Base Ply | Sub Material | $ 30,000.00 |
| 15 | 07-00 00 - Thermal and Moisture Protection | Cap Sheet | Sub Material | $ 15,950.00 |
| 16 | 07-00 00 - Thermal and Moisture Protection | BUR Flashing | Sub Material | $ 3,000.00 |
| 17 | 07-00 00 - Thermal and Moisture Protection | Aluminum Flashing | Sub Material | $ 1,267.00 |
| 18 | 07-00 00 - Thermal and Moisture Protection | Coverboard and Base Ply Installation | Sub Labor | $ 39,500.00 |
| 19 | 07-00 00 - Thermal and Moisture Protection | Cap Sheet Installation | Sub Labor | $ 20,000.00 |
| 20 | 07-00 00 - Thermal and Moisture Protection | BUR Flashing Installation | Sub Labor | $ 3,900.00 |
| 21 | 07-00 00 - Thermal and Moisture Protection | Final Testing and Inspection | Commitment | $ 6,500.00 |
| 22 | 07-00 00 - Thermal and Moisture Protection | Alum. Flashing Installation | Sub Labor | $ 1,000.00 |
| 23 | 07 - Thermal and Moisture Protection | Price and Performance Bond | Other | $ 15,033.00 |
| | | | Grand Total: | $ 766,450.00 |

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

# BES Design/Build, LLC Subcontract Articles

### ARTICLE 1

#### INTENTIONALLY LEFT BLANK

### ARTICLE 2

#### SCOPE OF WORK

2.1     **SUBCONTRACTOR'S WORK.** The Contractor contracts with the Subcontractor as an independent contractor, to perform the work described in Article 16. The Subcontractor shall perform such work (hereinafter called the "Subcontractor's Work") under the general direction of the Contractor and in accordance with this Agreement and the Contract Documents.

2.2     **CONTRACT DOCUMENTS.** The Contract Documents which are binding on the Subcontractor are as set forth in Paragraph 16.5. Prior to execution of this contract the Contractor shall furnish a copy of any part of these documents. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor.

2.3     **"FLOW-DOWN PROVISIONS"** are those terms and conditions of the Prime Contract and/or Delivery Order/ Task Order that also apply to the Subcontractor. A copy of the *Contractor's* agreement with the Owner, known as the Prime Agreement (from which compensation amounts may be deleted), is made a part of this Agreement and will be provided before execution of this contract. By signing this document, the Consultant acknowledges that the Prime Agreement with the Owner flows down to the Consultant's firm, which is a stipulation in the Prime Agreement.  Subcontractor shall have the benefit of all rights and remedies toward the Contractor as the Contractor has toward the Owner.

2.5     **CONFLICTS.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern.

### ARTICLE 3

#### SCHEDULE OF WORK

3.1     **TIME IS OF ESSENCE.** Time is of the essence for both parties, and they mutually agree to see to the performance of their respective work and the work of their subcontractors so that the entire Project may be completed in accordance with the Contract Documents and the Schedule of Work. The Contractor shall prepare the Schedule of Work and revise such schedule as the Work progresses. Subcontractor shall have a minimum of 100 work days with conditions suitable to perform roofing work to obtain substantial completion of roof.

3.2     **DUTY TO BE BOUND.** Both the Contractor and the Subcontractor shall be bound by the Schedule of Work.
The Subcontractor shall provide the Contractor with any requested scheduling information for the Subcontractor's Work. The Schedule of Work and all subsequent changes thereto shall be submitted to the Subcontractor in advance of the required performance.

3.3     **SCHEDULE CHANGES.** The Subcontractor recognizes that changes will be made in the Schedule of Work and agrees to comply with such changes.

3.4     **PRIORITY OF WORK.** The Contractor shall have the right to decide the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontractor's Work. The Subcontractor shall commence its work within two days of notice to proceed or the agreed upon time from the Contractor and if such work is interrupted for any reason the Subcontractor shall resume such work within two working days from the Contractor's notice to do so.

### ARTICLE 4

#### CONTRACT PRICE

The Contractor agrees to pay to the Subcontractor for the satisfactory performance of the Subcontractor's Work the amount stated in Article 1 subject to additions or deductions per Article 6.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

## Wage Determination

### DAVIS – BACON ACT

Be advised that as this is a federal project, therefore, the Davis-Bacon Act applies and must be strictly enforced. The Department of Labor requires minimum pre-established prevailing wages and fringe rates be paid to workers on this site as provided in the Wage Determination information attached to this Subcontract Agreement. Effective with the date of subcontract execution, through to final work on site, weekly Certified Payroll Reports (CPRs) are required to be submitted to BESDB each week to certifiedpayroll@besdesignbuild.com using federal form WH-347 or similar which are to detail all craft labor and mechanics employed by Subcontractor and any lower-tier Subcontractors working on the site of the work. If no work has been performed by the subcontractor or their lower tier subcontractors during a work week, a "No Work" CPR must be submitted. Payments to the subcontractor will be held until all compliant CPRs for the subcontractor and their lower tier subcontractors have been received and validated covering the period of the subcontractor's pay application. The final CPR submitted by the subcontractor and their lower tier subcontractors must state "Final" in order for final payment to be released to the subcontractor. The certification of the CPRs must be provided by the applicable legal employer representative of the craft labor and/or mechanics listed, and must be notarized. The originals of all CPRs are also to be mailed to BESDB corporate offices located at: 766 Middle Street, Fairhope, AL 36532.

### THE SERVICE CONTRACT ACT OF 1965

The provisions of The Service Contract Act of 1965 are not applicable to this project, and as such, reporting for the provisions of The Service Contract Act of 1965 are not required.

### STATEMENT AND ACKNOWLEDGEMENT FORM (SF-1413)

Within 7 days after award of the contract, the subcontractor shall deliver to the Contractor a completed Statement of Acknowledgment Form (SF 1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the following clauses: Davis-Bacon Act, Contract Work Hours and Safety Standards Act -- Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination -- Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other clauses as the Owner Contracting Officer may, by appropriate instructions, require, and also a clause requiring subcontractors to include these clauses in any lower tier subcontracts.

The Subcontractor shall also have all lower-tier subcontractors performing any construction type work under this subcontract sign and return a completed Statement of Acknowledgment Form (SF 1413) acknowledging the aforementioned clauses.

### ARTICLE 5

### PAYMENT

**5.1    GENERAL PROVISIONS**
**5.1.1    SCHEDULE OF VALUES.** The Subcontractor shall provide a schedule of values satisfactory to the Contractor and the Owner no more than fifteen (15) days from the date of execution of this Agreement.

**5.1.2    ARCHITECT VERIFICATION.** Upon request the Contractor shall give the Subcontractor written authorization to obtain directly from the Architect the percentage of completion certified for the Subcontractor's Work.

**5.1.3    PAYMENT USE RESTRICTION.** Payment received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials for use in performing the Subcontractor's work on this project before it is used in any other manner.

**5.1.4    PAYMENT USE VERIFICATION.** The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid promptly by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work through the period covered by previous payments received from Contractor.

**5.1.5    PARTIAL LEIN WAIVERS AND AFFIDAVITS.** As a prerequisite for payment, the Subcontractor shall provide in a form satisfactory to the Owner or the Contractor, partial lien or claim waivers and affidavits from the Subcontractor, and its subcontractors and suppliers for the completed Subcontractor's Work. Such waivers may be made conditional upon payment.

**5.1.6    SUBCONTRACTOR PAYMENT FAILURE.** Upon payment by the Contractor, Subcontractor shall promptly pay its lower-tier subcontractors and material suppliers the amounts to which they are entitled. In the event the Contractor has reason to believe that labor, material or other obligations incurred in the performance of the Subcontractor's Work are not being paid, the Contractor may give written notice of such claim or lien to the Subcontractor and may take any steps deemed necessary to assure that progress payments are utilized to pay such obligations including but not limited to the issuance of joint checks. If upon receipt of said notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Contractor that the moneys owing to the claimant(s) have been paid; or (b) post a bond



DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

indemnifying the Owner, the Contractor, and the Contractor's surety, if any, and the premises from such claim or lien; then the Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor a reasonable amount to protect the Contractor from any and all loss, damage or expense including attorney's fees arising out of or relating to any such claim or lien until the claim or lien has been satisfied by the Subcontractor.

**5.17   SUBCONTRACTOR ASSIGNMENT OF PAYMENTS.** The Subcontractor shall not assign any moneys due or to become due under this Contract, or under any Change Order thereto, without the written consent of Contractor, unless such assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code. Should Subcontractor assign all or any part of any moneys due or to become due under this Contract, to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work under this Subcontract and any Change Orders.

**5.18   PAYMENT NOT ACCEPTANCE.** Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontractor's Work.

**5.2   PROGRESS PAYMENTS**
**5.21   APPLICATION.** Subcontractor's application for payment shall be itemized and supported by substantiating data as required in the contract Documents for the Contractor's payment application. Subcontractor's application shall be notarized if required. Subcontract payment applications may include payment requests on account of properly authorized Construction Change Directives. The Subcontractor's progress payment application for work performed in the preceding payment period shall be submitted to the Contractor per the terms of this Agreement and specifically Subparagraphs 5.1.1, 5.2.2, 5.2.3, and 5.2.4 for approval of the Contractor. The Contractor shall forward, without delay, the approved value to the Owner for payment.

**5.22   RETAINAGE/SECURITY.** The rate of retainage shall be equal to the percentage retained from the Contractor's payment by the Owner for the Subcontractor's Work, provided the Subcontractor furnishes a bond or other security to the satisfaction of the Contractor.
    If the Subcontractor has furnished such bond or security, its work is satisfactory and the Contract Documents provide for reduction of retainage at a specified percentage of completion, the Subcontractor's retainage shall also be reduced when the Subcontractor's Work has attained the same percentage of completion and the Contractor's retainage for the Subcontractor's Work has been so reduced by the Owner. However if the Subcontractor does not provide such bond or security, the rate of retainage shall be 5%.
All invoice requests require the following in order to be processed or they will be rejected:
    1.      Certified Payrolls as applicable
    2.      Lien Waivers (interim and final)
    3.      Invoice
Additionally, all contracts $50,000 and above require a Schedule of Values from which the subcontractor will invoice and they will be required to list on the SOV:
    Close-out documents at 5%
    Final testing, inspection and acceptance at 5%

**5.23   TIME OF APPLICATION.** The Subcontractor shall submit progress payment applications to the Contractor no later than the 20th day of each payment period for work performed up to and including the 20th day of the payment period indicating work completed and, to the extent allowed under Subparagraph 5.2.4, materials suitably stored during the preceding payment period.

**5.24   STORED MATERIALS.** Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontractor's Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditional upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment or otherwise protect the Owner's and Contractor's interest therein, including transportation to the site.

**5.25   TIME OF PAYMENT.** Progress payments to the Subcontractor for satisfactory performance of the Subcontractor's Work shall be made no later than fourteen (14) days after the Contractor receives payment from the Owner for the Work performed for the invoicing period. Unless Owner's nonpayment is due to Contractor.  If Subcontractor has performed its work but Owner does not make payment to Contractor or another trade, Subcontractor shall be entitled to payment.  If Subcontractor is not paid, Subcontractor shall be entitled to interest at the rate of 1% per month plus costs of collection, including attorney's fees.  Subcontractor shall not be required to continue to work if not paid.

**5.26   PAYMENT DELAY.** If for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Contractor within seven (7) days after such payment is due, as defined in Sub-paragraph 5.2.5, then the Subcontractor, upon giving an additional seven (7) days written notice to the Contractor, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received. To the extent obtained by the Contractor under the Contract Documents, for claims for which the Owner is liable, the contract price shall be increased by the amount of the Subcontractor's reasonable cost of shutdown, delay, and start- up, which shall be effected by appropriate Change Order.
    If the Subcontractor's Work has been stopped for thirty (30) days because the Subcontractor has not received progress payments as required hereunder, the Subcontractor may terminate this Agreement upon giving the Contractor an additional seven (7) days written notice.



DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

**5.3   FINAL PAYMENT**

**531   APPLICATION.** Upon acceptance of the Subcontractor's Work by the Owner the Contractor, and if necessary, the Architect; and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations in accordance with the Contract Documents and Subparagraph 5.3.2, the Contractor shall forward the Subcontractor's application for final payment without delay.

**532   REQUIREMENTS.** Before the Contractor shall be required to forward the Subcontractor's application for final payment to the Owner, the Subcontractor shall submit to the Contractor:

(a)   an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontractor's Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied, through the period covered by previous payments received from Contractor;

(b)   consent of surety to final payment, if required;

(c)   satisfaction of required closeout procedures;

(d)   certification that insurance required by the Contract Documents to remain in effect beyond final payment pursuant to Paragraph 13.4 is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Contractor unless a longer period is stipulated in the Contract; and

(e)   other data if required by the Contractor or Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designated by the Contractor or Owner. Such waivers shall be conditioned upon receipt of payment. Final payment shall constitute a waiver of all claims for payment by the Subcontractor relating to the Subcontractor's Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraph 9.10, or for faulty or defective work appearing after final payment.

**533   TIME OF PAYMENT.** Final payment of the balance due of the Contract Price shall be made to the Subcontractor:

(a)   upon receipt of the Owner's waiver of all claims for payment related to the Subcontractor's Work except for unsettled liens, unknown defective work, and noncompliance with the Contract Documents or warranties; and

(b)   within seven (7) days after receipt by the Contractor of final payment form the Owner for such Subcontractor's Work. Unless Owner's nonpayment is due to Contractor. If Subcontractor has performed its work by Owner does not make payment to Contractor or another trade, Subcontractor shall be entitled to payment. If Subcontractor is not paid, Subcontractor shall be entitled to interest at the rate of 1% per month plus costs of collection, including attorney's fees. Subcontractor shall not be required to continue to work if not paid.

**534   FINAL PAYMENT DELAY.** If the Owner or its designated agent does not issue a certificate for Final Payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontractor's Work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest thereon. Unless Owner's nonpayment is due to Contractor. If Subcontractor has performed its work but Owner does not make payment to Contractor or another trade, Subcontractor shall be entitled to payment. If Subcontractor is not paid, Subcontractor shall be entitled to interest at the rate of 1% per month plus costs of collection, including attorney's fees. Subcontractor shall not be required to continue to work if not paid.

**5.4   LATE PAYMENT INTEREST.** To the extent obtained by the Contractor, under the Contract Documents, progress payments or final payment due and unpaid under this Agreement shall bear interest from the date payment is due at the rate provided in the Contract Documents, or, in the absence thereof, at the legal rate prevailing at the place of the Project. Unless Owner's nonpayment is due to Contractor. If Subcontractor has performed its work but Owner does not make payment to Contractor or another trade, Subcontractor shall be entitled to payment. If Subcontractor is not paid, Subcontractor shall be entitled to interest at the rate of 1% per month plus costs of collection, including attorney's fees. Subcontractor shall not be required to continue to work if not paid.

**ARTICLE 6**

**CHANGES, CLAIMS AND DELAYS**

**61   CHANGES.** When the Contractor orders in writing, the Subcontractor, without nullifying this Agreement, shall make any and all changes in the Work which are within the general scope of this Agreement. Adjustments in the Contract Price or Contract time, if any, resulting from such changes shall be set forth in a Subcontract Change Order or a Subcontract Construction Change Directive pursuant to the Contract Documents. No such adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Contractor. Contractor and Subcontractor recognize that subcontractor may be called upon to perform extra or changed work to respond to field conditions or in response to a verbal request prior to execution of a formal change order. The parties agree to work in good faith with each other so that Subcontractor does not proceed with changed work without authorization and Subcontractor receives fair compensation for authorized, change work. A Subcontract Change Order is a written instrument prepared by the Contractor and signed by the Subcontractor stating their agreement upon the change in the scope of the Work, adjustment in the contract Price or Schedule of Work. A Subcontract Construction Change Directive is a written instrument prepared by the Contractor directing a change in the Work and stating a proposed adjustment, if any, in the Contract Price or Schedule of Work or both. A Subcontract Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

**62   CLAIMS RELATING TO OWNER.** The Subcontractor agrees to make all claims for which the Owner is or may be liable in the manner and within the time limits provided in the Contract Documents for like claims by the Contractor upon the Owner and in sufficient

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

time for the Contractor to make such claims against the Owner in accordance with the Contract Documents. The Contractor agrees to permit the Subcontractor to prosecute a claim in the name of the Contractor for the use and benefit of the Subcontractor in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner.

**6.3    CLAIMS RELATING TO CONTRACTOR.**
The Subcontractor shall give the Contractor written notice of all claims not included in Paragraph 6.2 within thirty (30) days of the Subcontractor's knowledge which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor not relating to claims included in Paragraph 6.2 shall be resolved in the manner provided in Article 14.

**6.4    ADJUSTMENT IN CONTRACT PRICE.** If a Subcontract Change Order or Construction Change Directive requires an adjustment in the Contract Price, the adjustment shall be established by one of the following methods:
1.  mutual agreement on a lump sum with sufficient information to substantiate the amount;
2.  unit prices already established in the Contract Documents or if not established by the Contract Documents then established by mutual agreement for this adjustment; or
3.  a mutually determined cost plus a jointly acceptable allowance for overhead and profit.

**6.5    SUBSTANTIATION OF ADJUSTMENT.** If the Subcontractor does not respond promptly or disputes the method of adjustment, the method and the adjustment shall be determined by the Contractor on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Price, an allowance for overhead and profit of 15%.
The Subcontractor shall maintain for the Contractor's review and approval an appropriately itemized and substantiated accounting of the following items attributable to the Subcontract Change Order or Subcontract Construction Change Directive:
1.  labor costs, including Social Security, health, welfare, retirement and other fringe benefits as normally required, and state worker's compensation insurance;
2.  costs of materials, supplies and equipment, whether incorporated in the Work or consumed, including transportation costs;
3.  costs of renting, either from the Contractor or from others, of machinery and equipment and other than hand tools;
4.  costs of bond and insurance premiums, permit fees and taxes attributable to the change; and
5.  costs of additional supervision and field office personnel services necessitated by the change.

**6.6    DELAY.** If the progress of the Subcontractor's Work is substantially delayed without the fault or responsibility of the Subcontractor, then the time for the Subcontractor's Work shall be extended by Subcontract Change Order or Subcontract Construction Change Directive to the extent obtained by the Contractor under the contract Documents for claims for which the Owner is liable and the Schedule of Work shall be revised accordingly.
The Contractor shall not be liable to the Subcontractor for any damages or additional compensation as a consequence of delays caused by any person not a party to this Agreement unless the Contractor has first recovered the same on behalf of the Subcontractor from said person. If the Subcontractor is delayed due to the fault of the Contractor or persons or entities for whose acts the Contractor may be liable, and Subcontractor incurs additional costs as a result thereof, then Subcontractor shall also be entitled to an equitable adjustment of the contract price.

**6.7    LIQUIDATED DAMAGES.** If the Contract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Contract Documents, and such damages are assessed, then the Contractor may assess same against the Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay. However the amount of such assessment shall not exceed the amount assessed against the Contractor.
Nothing set forth herein shall limit the Subcontractor's liability to the Contractor for the Contractor's actual delay damages caused by the Subcontractor's delay to the extent the delay was due to the fault of Subcontractor. The Subcontractor shall be liable to the Contractor for the Contractor's actual damages caused by the Subcontractor's delay to the extent the delay was due to the fault of Subcontractor.

**ARTICLE 7**

**CONTRACTOR'S OBLIGATIONS**

**7.1    CONTRACT DOCUMENTS.** Prior to executing this Subcontract, the Contractor shall make available to the Subcontractor the Contract Documents which are binding on the Subcontractor and set forth in Paragraph 16.5.

**7.2    AUTHORIZED REPRESENTATIVE.** The Contractor shall designate one or more persons who shall be the Contractors authorized representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) the subcontractor shall look to for instructions, orders and/or directions, except in an emergency.

**7.3    STORAGE APPLICATIONS.** The Contractor shall allocate adequate storage areas, if available, for the Subcontractor's materials and equipment during the course of the Subcontractor's Work.

**7.4    TIMELY COMMUNICATIONS.** The Contractor shall transmit, with reasonable promptness, all submittals, transmittals, and written approvals relating to the Subcontractor's Work.

**7.5    NON-CONTRACTED SERVICES.** The Contractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Contractor provides the Subcontractor notice in writing five (5) days.
(a)    prior to furnishing of the services and materials, except in an emergency affecting the safety of persons or property;

DocuSign Envelope ID: CE62F7D0-207C-462C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

   (b)   in writing of such claim within three days of first furnishing such services or materials; and
   (c)   the written charges for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

## ARTICLE 8

### SUBCONTRACTOR'S OBLIGATIONS

**8.1**    **OBLIGATIONS DERIVATIVE.** The Subcontractor binds itself to the Contractor under this Agreement in the same manner as the Contractor is bound to the Owner under the Contract Documents, applicable Federal Acquisition Regulations and supplemental agency regulations and will so bind its lower-tier subcontractors. The Subcontractor shall make available to its lower-tier subcontractors the Contract Documents which are binding on the lower-tier subcontractors.

**8.2**    **RESPONSIBILITIES.** The Subcontractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools as are necessary for the proper performance of the Subcontractor's Work in strict accordance with and reasonably inferable from the Contract Documents. Subcontractor will perform work indicated on the plans and specifications furnished to Subcontractor, including work that is reasonably inferred therefrom and customarily performed by roofing contractor even when that specific work item is not explicitly stated in the plans and specifications. Subcontractor is not responsible to perform, without additional compensation, other work items that have not been included in Subcontractor's scope of work as stated in the applicable sections of the plans and specifications. Subcontractor is not responsible for omissions by the Design Professionals. The Subcontractor shall provide a list of proposed subcontractors and suppliers, be responsible for taking field dimensions, providing tests, ordering of materials and all off-site items as required to meet the Schedule of Work. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

**8.3**    **SHOP DRAWINGS.** The Subcontractor shall be responsible to the Contractor for the accuracy and conformity with the Contract Documents and other submittals that pertain to its work in the same manner as the Contractor is responsible to the Owner. Shop drawings, or their approval by the Contractor, shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents.

**8.4**    **TEMPORARY SERVICES.** The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its work, except as provided in Article 16. Said article also identifies those common temporary services, if any, which are to be furnished by the Subcontractor.

**8.5**    **COORDINATION.** The Subcontractor shall:
   (a)   cooperate with the Contractor and all others whose work may interfere with the Subcontractor's Work;
   (b)   specifically note and immediately advise the Contractor of any such interference with the Subcontractor's Work; and
   (c)   participate in the preparation of coordination drawings and work schedules in areas of congestion.

**8.6**    **AUTHORIZED REPRESENTATIVE.** The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) to whom the Contractor shall issue instructions, orders or directions, except in an emergency.

**8.7**    **PROVISION FOR INSPECTION.** The Subcontractor shall notify the Contractor when portions of the Subcontractor's Work are ready for inspection. The Subcontractor shall at all times furnish the Contractor and its representatives adequate facilities for inspecting materials at the site or any place where materials under this Agreement may be in the course of preparation, process, manufacture or treatment.

   The Subcontractor shall furnish to the Contractor, in such detail and as often as required, full reports of the progress of the Subcontractor's Work irrespective of the location of such work. Additionally, Subcontractor shall pay Contractor the cost of any re-inspections due to failure of an inspection on work performed by the Subcontractor.

**8.8**    **CLEANUP.** The Subcontractor shall follow the Contractor's cleanup and safety directions, and
   (a)   at all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work; and
   (b)   broom clean each work area prior to discontinuing work in the same.

If the Subcontractor fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from the Contractor of non-compliance, the Contractor may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**SAFETY.** The prevention of accidents on or in the vicinity of its Work is the Subcontractor's responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Owner, including, but not limited to, requirements imposed by the Contract Documents. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of the responsibility therefore. Subcontractor shall notify Contractor immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished to the Contractor. Subcontractor shall indemnify Contractor for fines, damages or expenses incurred by the Contractor because of the Subcontractor's failure to comply with safety requirements. Subcontractor is not responsible for OSHA violations committed by Contractor. Subcontractor shall be responsible for protection of their persons and property on and about the site of its work, and Subcontractor warrants that it will take the precautions necessary to ensure a safe working environment for the safety of all persons and property on the site that may be affected by their work.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

Subcontractor understands and acknowledges the potential for contact with hazardous waste or materials in the conduct of the work and certifies that its employees engaged in the work have completed health and safety training courses as specified by the Occupational Safety and Health Administration (OSHA), Environmental Protection Agency (EPA) and respective chapters 29 and 40 of the Code of Federal Regulations (CFR). Subcontractor shall additionally assure its compliance with CONTRACTOR's health and safety policies and procedures, site safety plans or other health and safety rules specified for the work. Subcontractor shall flow down this requirement to any and all lower-tiered subcontractors.

Subcontractor shall provide and maintain work environments and procedures which will: (1) Safeguard the public and CONTRACTOR and Government personnel, property, materials, supplies, and equipment exposed to Subcontractor operations and activities; (2) Avoid interruptions of CONTRACTOR and Government operations and delays in project completion dates; and (3) Control costs in the performance of this subcontract. For these purposes on subcontracts for construction or dismantling, demolition, or removal of improvements, the Subcontractor shall: (1) Provide appropriate safety barricades, signs, and signal lights; (2) Comply with the regulations issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910, Federal Acquisition Regulation (FAR), and Veterans Affairs Acquisition Regulation (VAAR); and (3) Ensure that any additional measures CONTRACTOR determines to be reasonably necessary are taken.

If this Subcontract is for construction or dismantling, demolition or removal of improvements with any Department of Veteran Affairs agency or component, the Subcontractor shall comply with all pertinent provisions of the latest version of OSHA, in effect on the date of the solicitation.

Whenever CONTRACTOR becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, CONTRACTOR shall notify the Subcontractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Subcontractor or the Subcontractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Subcontractor shall immediately take corrective action. If the Subcontractor fails or refuses to promptly take corrective action, CONTRACTOR may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Subcontractor shall not be entitled to any equitable adjustment of the Subcontract price or extension of the performance schedule on any stop work order issued under this clause.

Before commencing the work, the Subcontractor shall: (1) submit a written proposed plan for ensuring site safety and accident prevention. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in Subcontract work performance and a plan for controlling these hazards; and (2) meet with representatives of CONTRACTOR to discuss and develop a mutual understanding relative to administration of the overall safety program. The Subcontractor shall reference the safety addendums included; (1) BESDB Safety Manual, (2) Subcontractor Safety Requirements.

Subcontractor shall insert the full text of this article, with appropriate changes in the designation of the parties, in all lower-tier subcontracts.

**8.9     PROTECTION OF THE WORK.** The Subcontractor shall take necessary precautions to properly protect the Subcontractor's Work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor. Contractor shall coordinate the Project so that the Project proceeds in an orderly and customary manner and so as to avoid newly installed roofing being used as a surface for on-going construction work. If Subcontractor's work is damaged by other trades, Contractor agrees to back charge the trades causing the damage. Contractor will purchase or arrange with Owner to maintain Builder's Risk Insurance.

**8.10    PERMITS, FEES AND LICENSES.** The Subcontractor shall give adequate notices to authorities pertaining to the Subcontractor's Work and secure and pay for all permits, fees, licenses, assessments, inspections and taxes necessary to complete the Subcontractor's Work in accordance with the Contract Documents.
         To the extent obtained by the Contractor under the Contract Documents, the Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of the Agreement.

**8.11    SUBCONTRACTOR ASSIGNMENT OF WORK.** The Subcontractor shall not assign the whole nor any part of the Subcontractor's Work without prior written approval of the Contractor. The Contractor's approval shall not be unreasonably withhold. Lower-tier subcontractors and suppliers previously approved by the Contractor may be listed at Paragraph 16.4.

**8.12    NON-CONTRACTED SERVICES.** The Subcontractor agrees, except as other wise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Subcontractor provides the contractor notice:
   (a)   prior to furnishing of the services or materials, except in an emergency affecting the safety of persons or property;
   (b)   In writing of such claim within three (3) days of first furnishing such services or materials; and
   (c)   The written charge for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

**8.13    MATERIALS SAFETY.** To the extent that the Contractor is not obligated by the Contract documents or by law to perform work which involves pollutants, hazardous or toxic substances, hazardous waste, asbestos or PCB's, the Subcontractor likewise is not obligated. To the extent that the Contractor has obligations under the Contract Documents or by law regarding such materials within the scope of the Subcontractor's work, the Subcontractor likewise shall have these obligations. The Subcontractor's price and this contract are based upon Subcontractor not coming into contact with asbestos or asbestos-containing or toxic materials at Owner's building. If asbestos or asbestos-containing or toxic materials are encountered, the contract price and time to complete the contract will be adjusted based upon the additional costs and time resulting from the presence of asbestos or toxic materials in the building. Subcontractor is not responsible for damages or leaks due to existing conditions or existing sources of leakage simply because Subcontractor started work

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



on a building or performed repair work.

**Contract
SC-16529-002**

### ARTICLE 9

#### SUBCONTRACT PROVISIONS

**9.1    LAYOUT RESPONSIBILITY AND LEVELS.** The contractor shall establish principal axis lines of the building and site whereupon the subcontractor shall lay out and be strictly responsible for the accuracy of the Subcontractor's Work and for any loss or damage to the Contractor or others by reason of the Subcontractor's failure to set out or perform its work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details shall result in the alignment of finish surfaces.

**9.2    WORKMANSHIP.** Every part of the Subcontractor's Work shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the Subcontractor's Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Contract Documents to be otherwise.

**9.3    MATERIALS FURNISHED BY OTHERS.** In the event the scope of the Subcontractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

**9.4    SUBSTITUTIONS.** No Substitutions shall be made in the Subcontractor's Work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions. The Subcontractor shall indemnify the Contractor as a result of such substitutions, whether or not the Subcontractor has obtained approval thereof.

**9.5    USE OF CONTRACTOR'S EQUIPMENT.** The Subcontractor, its agents, employees, subcontractors or suppliers shall not use the Contractor's equipment without the express written permission of the Contractor's designated representative.

    If the Subcontractor or any of its agents, employees, suppliers or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items owned, leased, or under the control of the Contractor, the Subcontractor shall defend, indemnify and be liable to the Contractor as provided in Article 12 for any loss or damage (including personal injury or death) which may arise from such misuse except where such loss or damage shall be found to have been due to the negligence of the Contractor's employees operating such equipment.

**9.6    CONTRACT BOND REVIEW.** The Contractor's Payment Bond for the Project, if any, may be reviewed and copied by the Subcontractor. Subcontractor is required to provide a Payment and Performance Bond-Back for the total amount of this contract for all contracts $100,000.00 and above unless otherwise noted in the inclusions or exclusions section.

**9.7    OWNER ABILITY TO PAY.** The Subcontractor shall have the right to receive from the Contractor such information as the Contractor has obtained relative to the Owner's financial ability to pay for the Work.

**9.8    PRIVITY.** Until final completion of the Project the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All Work for this Project performed by the Subcontractor shall be processed and handled exclusively by the Contractor.

**9.9    SUBCONTRACT BOND.** If a Performance and Payment Bond is not required of the subcontractor under Article 16, then within the duration of this Agreement, the Contractor may require such bonds **through written notice prior to execution of this contract and the** Subcontractor shall provide the same.

    Said bonds shall be in the full amount of this Agreement in a **standard industry form and by a surety reasonably satisfactory to** the Contractor.

    The Subcontractor shall be reimbursed without retainage for cost of same simultaneously with the first progress payment hereunder.

    In the event the Subcontractor shall fail to promptly provide such requested bonds, the Contractor may terminate this Agreement and re-let the work to another subcontractor and all Contractor costs and expenses incurred thereby shall be paid by the Subcontractor.

**9.10    WARRANTY.** The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents.

    The Subcontractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Contract Documents without cost to the Owner or the Contractor.

    If no warranty is required of the Contractor in the Contract Documents, then the Subcontractor shall warrant its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's Work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.

    The Subcontractor further agrees to execute any special warranties that shall be required for the Subcontractor's Work prior to final payment.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA0E



**Contract**
**SC-16529-002**

### ARTICLE 10

### RECOURSE BY CONTRACTOR

**10.1    FAILURE OF PERFORMANCE**

**10.1.1    NOTICE TO CURE.** If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work due to the fault of Subcontractor, or it fails to make prompt payment for its workers, lower-tier subcontractors or suppliers, through the period covered by previous payments received from Contractor, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, provided that the building, Contract Documents and plans and specifications are in compliance therewith or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor without prejudice to any rights or remedies, shall have the right to any or all of the following remedies;

    (a)   supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work; or any part thereof which the Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable attorney's fees;

    (b)   contract with one or more additional contractors, to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;

    (c)   withhold payment of any moneys due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the reasonable satisfaction of the Contractor; and

    (d)   in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

**10.1.2    TERMINATION BY CONTRACTOR.** If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 10.1.1, then the Contractor may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification, to the Subcontractor and its surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) working days of the written notification, the Agreement will be deemed terminated.

    The Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as the Contractor deems necessary to maintain the orderly progress of the Work.

    All costs incurred by the Contractor in performing the Subcontractor's Work, including reasonable overhead, profit and attorney's fees, shall be deducted from any moneys due or to become due the Subcontractor. Additionally, legal action may be taken against Subcontractor for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

**10.2    BANKRUPTCY**

**10.2.1    TERMINATION ABSENT CURE.**

If Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default or the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions for the Bankruptcy Code.

**10.2.2    INTERIM REMEDIES.** If the Subcontractor is not performing in accordance with the Schedule of Work at the time a petition for bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Schedule of Work.

    The Contractor may offset against any sums due or to become due the Subcontractor all costs incurred in pursing any of the remedies provided hereunder, including but not limited to, reasonable attorney's fees.

    The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

**10.3    SUSPENSION BY OWNER.** Should the Owner suspend its contract with the Contractor or any part which includes the Subcontractor's Work, the contractor shall so notify the Subcontractor in writing and upon written notification the Subcontractor shall immediately suspend the Subcontractor's Work.

    In the event of such Owner suspension, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

**10.4    TERMINATION BY OWNER.** Should the Owner terminate its contract with the Contractor or any part which includes the Subcontractor's Work, the Contractor shall so notify the Subcontractor in writing and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontractor's Work, follow all of Contractor's instructions, and mitigate all costs.

    In the event of such Owner termination, **not due to the fault of the Contractor**, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents.

    The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

**10.5    CONTINGENT ASSIGNMENT OF SUBCONTRACT**
The Contractor's contingent assignment of the Subcontract to the Owner, if provided in the contract Documents, is effective when the Owner (a) has terminated the Contract for cause and (b) has accepted the assignment by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under the Contractor's bond, if any. Subcontractor hereby consents to such assignment and agrees to be bound to the assignee by the terms of this Subcontract.

**10.6    SUSPENSION BY CONTRACTOR.** The Contractor may order the Subcontractor in writing to suspend, delay, or interrupt all or any part of the Subcontractor's Work for such period of time as may be determined to be appropriate for the convenience of the Contractor. Phased or interrupted Work when required shall not be deemed a suspension of Work.

The Subcontractor shall notify the Contractor in writing within ten (10) working days after receipt of the Contractor's order of the effect of such order upon the Subcontractor's Work. The Contract Price  or contract time shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension, delay or interruption.

No claim under this Article shall be allowed for any costs incurred more than ten (10) working days prior to the Subcontractor's notice to the Contractor.

Neither the Contract Price nor the contract time shall be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been so suspended delayed, or interrupted by the fault or negligence of the Subcontractor or by a cause for which Subcontractor would have been responsible.

The Contract Price shall not be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, delayed or interrupted by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

**10.7    WRONGFUL EXERCISE.** If the Contractor wrongfully exercises any option under this Article, the termination shall be governed in accordance with the laws of the state of Florida.

## ARTICLE 11

### LABOR RELATIONS

All headings herein are for convenience only and are not to be construed as limitations upon the scope of the paragraphs to which they refer. This Agreement is intended by the parties as the final, complete and exclusive expression of the terms and conditions of their agreement. No prior dealings between the parties and no usage of the trade shall be relevant to supplement this Agreement, and this Agreement shall supersede all other written and/or oral agreements between CONTRACTOR and Subcontractor.
Other:
Subcontractor will comply with all provisions of E.O. 11426, and related rules, regulations, and orders of the Secretary of Labor.
Additionally, *Subcontractor is required to comply with all flow down clauses of the contract between the Prime contractor and the Owner*
In the event that the Subcontractor does not comply with any of the requirements set forth in this contract, contract may be cancelled, terminated.

## ARTICLE 12

### INDEMNIFICATION

**12.1    SUBCONTRACTOR'S PERFORMANCE.** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, the Contractor (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract that:

(a)    any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;

(b)    such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.

(c)    Similarly, Contractor shall indemnify and hold harmless Subcontractor from all damages, losses, or expenses, including attorney's fees, arising from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to the extent due to the negligence of Contractor or the fault of any of its agents, representatives or employees.

**12.2    NO LIMITATION UPON LIABILITY.** In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**12.3    ARCHITECT EXLUSION.** Except as provided by the Contract Documents, the obligation of the Subcontractor under this Article 12 shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of

(a)    the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or

(b)    the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

**124    COMPLIANCE WITH LAWS.** The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents, provided that the building, Contract Documents and plans and specifications are in compliance therewith.

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures, provided that the building, Contract Documents and plans and specifications are in compliance therewith.

**125    PATENTS.** Except as otherwise provided by the Contract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontractor's Work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontractor's Work, which may be brought against the Contractor or Owner, and shall be liable to the contractor and Owner for all loss, including all costs, expenses, and attorney's fees.

**ARTICLE 13**

**INSURANCE**

**13.1    SUBCONTRACTOR'S INSURANCE.** Prior to start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and all insurance required of the Contractor under the Contract Documents.

The Contractor, Owner and other parties as designated in the Contract Documents shall be named as additional insured on each of these policies except for Workers' Compensation. In respect to Commercial General Liability Insurance, the additional insured status afforded the Contractor, Owner, or other parties shall be written to include coverage for products and completed operations liability coverage. Additional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Contractor or Owner. Contractor's policies will be non-contributory and excess insurance for claims to the extent caused by any negligent acts or omissions. Naming Contractor, Owner, and others as additional insureds ("Additional Insureds") on Subcontractor's liability insurance policy and making that coverage primary is intended to apply only to the extent that a negligent act or omission by Subcontractor causes a claim to be asserted or a loss to be sustained by an Additional Insured. This additional insured endorsement is not intended and shall not be construed to cause Subcontractor's insurer to be liable either to defend or to indemnify an Additional Insured for claims against or losses sustained by an Additional Insured that are not due to the fault of Subcontractor.

This insurance shall include contractual liability insurance covering the Subcontractor's obligations under Article 12, to the extent covered by standard commercial general liability (CGL) insurance policies.

**MINIMUM LIMITS OF LIABILITY.** The Subcontractor's Comprehensive or Commercial Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Paragraph 13.1, shall be written with limits of liability not less than the following: Subcontractor shall maintain, at its own expense, and shall require its subcontractors and suppliers to maintain, at their own expense, during the entire performance period under this Subcontract the following minimum valid and collectible insurance.

In accordance with FAR 28.307-2 and FAR 52.228-5, the following minimum coverage shall apply to this contract and must be presented prior to award:
Workers' Compensation and Employer's Liability: Contractors are required to comply with applicable Federal and State Workers' Compensation and Occupational Disease Statutes. If Occupational Diseases are not compensable under those statutes, they shall be covered under the Employer's Liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least $100,000.00 is required, except in States with exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers.
General Liability: $500,000.00 per occurrences and without any exclusionary clauses for asbestos that would void the general liability coverage.
Automobile liability: $200,000.00 per person; $500,000.00 per occurrence and $20,000.00 property damage.

**SUBCONTRACTOR'S PERFORMANCE.** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, BES Design/Build LLC (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract that:
Any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;
Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.
(ii)    Similarly, Contractor shall indemnify and hold harmless Subcontractor from all damages, losses, or expenses, including attorney's fees, arising from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to the extent due to the negligence of Contractor or the fault of any of its agents, representatives or employees.

The Subcontractor does hereby agree to indemnify and hold BESDB harmless from any and all damages, liability or costs, including reasonable attorneys' fees and costs of defense, to the extent caused by the subcontractors negligent acts, errors or omissions in the

DocuSign Envelope ID: CE82F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

**DESIGN/BUILD**

performance of its services under this agreement or any of its agents, employees, sub-subcontractors, assigns, or any other entity acting for or on behalf of the subcontractor.

In addition, the subcontractor does hereby indemnify and hold BESDB harmless to the same extent and on the same basis as BESDB has indemnified and held the Owner harmless under the terms and conditions of the Prime Contract, but only to the extent of the services to be performed by the subcontractor

**NO LIMITATION UPON LIABILITY.** In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**ARCHITECT EXCLUSION.** Except as provided by the Contract Documents, the obligation of the Subcontractor shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

**COMPLIANCE WITH LAWS.** The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents, provided that the building, **Contract Documents and plans an specifications are in compliance therewith.**

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures, **provided that the building, Contract Documents and plans an specifications are in compliance therewith.**

A. Worker's Compensation and Employers Liability Insurance in an amount not less than $100,000 or as prescribed by applicable law, including insurance covering liability under the Longshoremen's and Harbor Worker's Act and the Jones Act, if applicable.

B. Comprehensive General Bodily Injury and Broad Form Property Damage Liability Insurance. Such insurance shall include the following coverages: Broad Form Contractual Liability, Personal Injury Liability, Completed Operations, and Products Liability. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence

C. Automobile Bodily Injury and Property Damage Liability Insurance. Such insurance shall extend to owned, non-owned, and hired automobiles used in the performance of this subcontract. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence.

D. Pollution Insurance for liability stemming from releases of hazardous substances and pollutants resulting in damage to the environment and property (including environmental impairment, both sudden and gradual).

E. Other Requirements:

    (i) **Named Insured: BES Design-Build LLC and Owner shall be named as additional insured.**

    (ii) Naming Contractor, Owner, and others as additional insureds ("Additional Insureds") on Subcontractor's liability insurance policy and making that coverage primary is intended to apply only to the extent that a negligent act or omission by Subcontractor causes a claim to be asserted or a loss to be sustained by an Additional Insured. This additional insured endorsement is not intended and shall not be construed to cause Subcontractor's insurer to be liable either to defend or to indemnify an Additional Insured for claims against or losses sustained by an Additional Insured that are not due to the fault of Subcontractor.

    (iii) Primary Insurance: All policies shall be endorsed to provide that coverage provided by Subcontractor's insurance shall always be primary coverage as respects any insurance maintained by CONTRACTOR or Owner.

    (iv) Notice of Cancellation: All policies shall be endorsed to provide that 30 days prior written notice shall be given CONTRACTOR in the event of cancellation or material change in the policies.

    (v) Certificates: Subcontractor shall furnish Certificates of Insurance evidencing insurance required hereunder before the start of any work and upon request, shall furnish copies of the actual policies. Any failure of Subcontractor to provide the requisite insurance certificates shall not be construed as a waiver of Subcontractor's obligation to do so.

Subcontractor's compliance with the above insurance provisions shall not constitute a limitation of liability or in any way limit or affect Subcontractor's indemnification obligations under this Agreement. CONTRACTOR reserves the right to require additional insurance or coverage amounts for the policies above based on its evaluation of specific project criteria.

13.2    **NUMBER OF POLICIES.** Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

13.3    **CANCELLATION, RENEWAL OR MODIFICATION.** The Subcontractor shall maintain in effect all insurance coverage required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor.

All insurance policies shall contain a provision that the coverages afforded thereunder shall not be cancelled or not renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Contractor unless otherwise specifically required in the Contract Documents.

Certificate of Insurance, or certified copies of policies acceptable to the Contractor, shall be filed with the Contractor prior to the



DocuSign Envelope ID: CE82F7D0-207C-462C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

commencement of the Subcontractor's Work.

In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Agreement.

The Subcontractor shall continue to carry liability insurance for at least one year after final payment. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and one year thereafter.

13.4    WAIVER OF RIGHTS. The Contractor and Subcontractor waive all rights against each other and the Owner, the Architect, the Architect's consultants and agents or employees of any of them, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance; provided, however, that such waiver shall not extend to the acts of the Architect, the Architect's consultants, and the agents or employees of any of them listed in Paragraph 12.3.

Upon written request of the Subcontractor, the Contractor shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other equipment insurance in force for the Project and procured by the Contractor. The Subcontractor shall satisfy itself to the existence and extent of such insurance prior to commencement of the Subcontractor's Work.

If the Owner or Contractor have not purchased Builder's Risk insurance for the full insurable values of the Subcontractor's Work less a reasonable deductible up to $5,000.00, then the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Work, and, by appropriate Subcontractor Change Order, the cost of such additional insurance shall be reimbursed to the Subcontractor.

13.5    ENDORSEMENT. If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## ARTICLE 14

## ARBITRATION

14.1    AGREEMENT TO ARBITRATE. All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 14.2, shall be decided by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.

14.2    EXCEPTIONS. The agreement to arbitrate shall not apply to any claim:

(a)    of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration; or

(b)    asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contactor and Owner have not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other either before or after demand for arbitration is made.

In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

14.3    INITIAL DISPUTE RESOLUTION. If a dispute arises out of or relates to this Agreement, or the breach thereof, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to arbitration. Mediation will be commenced within the time limits for arbitration stipulated in the Contract Documents. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus ten (10) days or as otherwise provided in the contract Documents. Issues to be mediated are subject to the exceptions in Paragraph 14.2 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 14.4.

The arbitration proceeding shall be conducted according to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). However, the parties are not required to engage the services of the AAA to administer the arbitration proceeding. In any dispute that is referred to binding arbitration, the prevailing party shall be entitled to recover all costs and attorney's fees incurred in the arbitration proceeding. The final hearing of any arbitration proceeding under this Agreement shall be held in a mutually agreeable location.

14.4    NOTICE OF DEMAND. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the mutually agreed upon Arbitration Association. The demand for arbitration shall be made as required in the Contract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitation, whichever shall first occur. The location of the arbitration proceedings shall be in the State of Florida.

14.5    AWARD. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

14.6 **WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, the Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration. If the Subcontractor is continuing to perform, the Contractor shall continue to make payments in accordance with this Agreement.

14.7 **NO LIMITATION OF RIGHTS OR REMEDIES.** Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds.

14.8 **SAME ARBITRATORS.** To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

## ARTICLE 15

### CONTRACT INTERPRETATION

15.1 **INCONSISTENCIES AND OMISSIONS.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the Subcontractor to so notify the Contractor in writing within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of said notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions.

15.2 **LAW AND EFFECT.** This Agreement shall be governed by the law of Florida.

15.3 **SEVERABILITY AND WAIVER.** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

15.4 **ATTORNEY'S FEES.** Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

15.5 **TITLES.** The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

15.6 **ENTIRE AGREEMENT.** This Agreement is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

## ARTICLE 16

### SPECIAL PROVISIONS

16.1 **PRECEDENCE.** It is understood the work to be performed under this Agreement, including the terms and conditions thereof, is as described in Articles 1 through 16 together with the following Special Provisions, which are intended to complement same. However, in the event of any inconsistency the more specific provision directly applicable to the item in question shall govern.

16.2 **SCOPE OF WORK.** All work necessary or incidental in strict accordance with and reasonably inferable from the Contract Documents and as more particularly, though not exclusively, specified in the contract documents with the following clarifications:
- Superintendent to be on site at all times.
- Subcontractor to provide daily cleanup and safety inspections
- Comply with all current OSHA and Health Standards for the Construction Industry.
- All workers must have OSHA 10 hour certification and attend the VA infectious Disease Training
- Comply with all local, State and Federal Environmental Requirements.
- Superintendent/Project Manager to attend all coordination meetings when performing work onsite.
- Provide Daily Reports and Weekly Work Schedule.
- SCOPE: See Inclusions/Exclusions/Descriptions.
- Subcontractor will perform work indicated on the plans and specifications furnished to Subcontractor, including work that is reasonably inferred therefrom and customarily performed by roofing contractor even when that specific work item is not explicitly stated in the plans and specifications. Subcontractor is not responsible to perform, without additional compensation, other work items that have not been included in Subcontractor's scope of work as stated in the applicable sections of the plans and specifications. Subcontractor is not responsible for omissions by the Design Professionals.

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E



**Contract**
**SC-16529-002**

163    COMMON TEMPORARY SERVICES. The following "Project" common temporary services and/or facilities are for the use of all project personnel and shall be furnished as herein below noted:
> By this Subcontractor; including but not limited to: Phones.
> By others; water, electricity. Water and electricity to be provided at the facility, no remote capabilities (i.e., generators) to be provided.

164    OTHER SPECIAL PROVISIONS.

**1. Certified Payroll weekly**
**Certified Payroll Instructions:**
Subcontractor is to provide certified payroll copies to the Contractor on a weekly basis beginning with the first day worked and shall continue until the Subcontractors work is complete. Subcontractor shall distribute to the following:
- 1 email copy of certified payroll and invoice to jbanach@besdesignbuild.com; ntaplo@besdesignbuild.com
- Pay Application can be emailed to: accountspayable@besdesignbuild.com
- 1 original with the invoice to the billing location listed below:
> BES Design/Build LLC
> Attn: Accounts Payable
> PO Box 2263
> Fairhope, AL 36533

If the Subcontractor fails to provide all certified payrolls and statement of compliance as required under this subcontracts Section 1 wage determination clause, Contractor shall withhold payments to the Subcontractor until such violations have been corrected. Certified Payroll and Statement of Compliance of certified payroll can be submitted on the standard Government WH-347 Form which can be found at the US Department of Labor Website.

1. All submittals are to be received by BES Design/Build LLC, within Ten (10) working days of receipt of a Notice to Proceed.

2. Cancellation clause on the Certificate of Insurance shall read: "Should any of the above described policies be cancelled or have any material changes adversely affecting The BES Design/Build LLC, interest before the expiration date thereof, the issuing company will mail 30 days written notice to the certificate holder", The BES Design/Build, LLC will be named as additional insured. This certificate should be job specific.

165    CONTRACT DOCUMENTS
1. Scope of Work Proposal
2. Project RFP
3. Standard Form 1413
4. Subcontractor Safety Requirements Letter
5. Activity Hazard Analysis Form

*The terms and conditions of this contract are not to be changed either manual or electronic. Any changes to the official printed language of this contract shall void the entire agreement.*
*Attachments are for reference only and do not release the subcontractor noted in this contract from the requirements of this contract or the requirements of the flow down clauses of the prime contract.*
IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, the day and year first above written

BES Design Build, LLC
766 Middle Street
Fairhope, Alabama 36532-1534

| | |
|---|---|
| DocuSigned by: | |
| *[signature]* | 3/15/2017 |
| SIGNATURE | DATE |
| DocuSigned by: | |
| *[signature]* | 3/9/2017 |
| SIGNATURE | DATE |

Salomon Roofing and Construction
669 West 26th Street
Hialeah., Florida 33010

| | |
|---|---|
| *[signature]* | 3/1/17 |
| SIGNATURE | DATE |

DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E

## ADDENDUM TO THE CONTRACT
## BETWEEN

## BES DESIGN BUILD, LLC
## AND
## SALOMON ROOFING AND CONSTRUCTION

**Insert as indicated:**

1. Prior to execution of this contract,

2. will be provided before execution of this contract

3. Subcontractor shall have the benefit of all rights and remedies toward the Contractor as the Contractor has toward the Owner.

4. Subcontractor shall have a minimum of 100 work days with conditions suitable to perform roofing work to obtain substantial completion of roof.

5. through the period covered by previous payments received from Contractor

6. unless Owner's nonpayment is due to Contractor. If Subcontractor has performed its work but Owner does not make payment to Contractor. or some reason unrelated to Subcontractor such as a problem or dispute with Contractor or another trade, Subcontractor shall be entitled to payment. If Subcontractor is not paid, Subcontractor shall be entitled to interest at the rate of 1% per month plus costs of collection, including attorney's fees. Subcontractor shall not be required to continue to work if not paid.

7. for claims for which the Owner is liable

8. Such waivers shall be conditioned upon receipt of payment.

9. for payment ·

10. Contractor and Subcontractor recognize that Subcontractor may be called upon to perform extra or changed work to respond to field conditions or in response to a verbal request prior to execution of a formal change order. The parties agree to work in good faith with each other so that Subcontractor does not proceed with changed work without authorization and Subcontractor receives fair compensation for authorized, change work.

11. Subcontractor's knowledge

12. If the Subcontractor is delayed due to the fault of the Contractor or persons or entities for whose acts the Contractor may be liable, and Subcontractor incurs additional costs as a result thereof, then Subcontractor shall also be entitled to an equitable adjustment of the contract price.



DocuSign Envelope ID: CE62F7D0-207C-452C-B360-4BBFEBBFFA9E

13.  to the extent the delay was due to the fault of Subcontractor

14.  in writing five (5) days

15.  Subcontractor will perform work indicated on the plans and specifications furnished to Subcontractor, including work that is reasonably inferred therefrom and customarily performed by roofing contractor even when that specific work item is not explicitly stated in the plans and specifications. Subcontractor is not responsible to perform, without additional compensation, other work items that have not been included in Subcontractor's scope of work as stated in the applicable sections of the plans and specifications. Subcontractor is not responsible for omissions by the Design Professional.

16.  Subcontractor is not responsible for OSHA violations committed by Contractor.

17.  Subcontractor's price and this contract are based upon Subcontractor not coming into contact with asbestos or asbestos-containing or toxic materials at Owner's building. If asbestos or asbestos-containing or toxic materials are encountered, the contract price and time to complete the contract will be adjusted based upon the additional costs and time resulting from the presence of asbestos or toxic materials in the building. Subcontractor is not responsible for damages or leaks due to existing conditions or existing sources of leakage simply because Subcontractor started work on a building or performed repair work.

18.  Contractor shall coordinate the Project so that the Project proceeds in an orderly and customary manner and so as to avoid newly installed roofing being used as a surface for on-going construction work. If Subcontractor's work is damaged by other trades, Contractor agrees to backcharge the trades causing the damage. Contractor will purchase or arrange with Owner to maintain Builder's Risk insurance.

19.  misuse

20.  through written notice prior to execution of this contract

21.  standard industry

22.  reasonably

23.  due to the fault of Subcontractor

24.  provided that the building, Contract Documents and plans and specifications are in compliance therewith

25.  reasonable

26.  not due to the fault of Contractor



DocuSign Envelope ID: CE62F7D0-207C-462C-B380-4BBFEBBFFA9E

27. the termination shall be governed in accordance with the laws of the state of Florida.

28. Similarly, Contractor shall indemnify and hold harmless Subcontractor from all damages, losses, or expenses, including attorney's fees, arising from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to the extent due to the negligence of Contractor or the fault of any of its agents, representatives or employees.

29. for claims to the extent caused by any negligent

30. by Subcontractor

31. Naming Contractor, Owner, and others as additional insureds ("Additional Insureds") on Subcontractor's liability insurance policy and making that coverage primary is intended to apply only to the extent that a negligent act or omission by Subcontractor causes a claim to be asserted or a loss to be sustained by an Additional Insured. This additional insured endorsement is not intended and shall not be construed to cause Subcontractor's insurer to be liable either to defend or to indemnify an Additional Insured for claims against or losses sustained by an Additional Insured that are not due to the fault of Subcontractor.

32. to the extent covered by standard commercial general liability (CGL) insurance policies.

33. to the extent caused by

34. up to $5,000.00

35. Florida

36. the more specific provision directly applicable to the item in question

37. for payment

38. additional or changed work that have not yet been processed, and disputed items previously identified in writing which remain unresolved or have not been paid.

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NUMBER GS-P-04-16-EX-7084 | 2. TYPE OF SOLICITATION ☐ SEALED BID (IFB) ☒ NEGOTIATED (RFP) | 3. DATE ISSUED | PAGE 1 | OF | PAGES 8 |
|---|---|---|---|---|---|---|

IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NUMBER GS-P-04-16-EX-7456 | 5. REQUISITION/PURCHASE REQUEST NUMBER EQ4PC1N-16-5055 | 6. PROJECT NUMBER RFL11221 |
|---|---|---|

| 7. ISSUED BY | CODE | 4PQPA | 8. ADDRESS OFFER TO |
|---|---|---|---|
| Section A 77 FORSYTH ST SW ATLANTA, GA 30303-3490 United States | | | 4PQPA Section A 77 FORSYTH ST SW ATLANTA, GA 30303-3490 United States |

| 9. FOR INFORMATION CALL: | a. NAME Sue Kaiser | b. TELEPHONE NUMBER (Include area code) (NO COLLECT CALLS) 954-366-7840 |
|---|---|---|

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid and bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS (Title, identifying number, date)

See Continuation Page

11. The contractor shall begin performance within ___10___ calendar days and complete it within ___210___ calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory ☐ negotiable. (See _____ ).

12a. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? (If "YES", indicate within how many calendar days after award in item 12b.) ☒ YES ☐ NO

12b. CALENDAR DAYS
10

13. ADDITIONAL SOLICITATION REQUIREMENTS:

a. Sealed offers in original and _____ copies to perform the work required are due at the place specified in Item 8 by 10:00 AM (EST) (hour) local time ___6/23/2016___ (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

b. An offer guarantee ☒ is, ☐ is not required.

c. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

d. Offers providing less than ___60___ calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

STANDARD FORM 1442 (REV. 6/2014)
Prescribed by GSA - FAR (48 CFR) 53.236-1(d)

**OFFER (Must be fully completed by offeror)**

| 14. NAME AND ADDRESS OF OFFEROR (Include ZIP Code) | 15. TELEPHONE NUMBER (Include area code) |
|---|---|
| BES DESIGN/BUILD, LLC<br>766 MIDDLE ST<br>FAIRHOPE, AL 36532<br>DUNS: 808142454 | 251 990 5778 |
| | 16. REMITTANCE ADDRESS (Include only if different than Item 14.) |

| CODE | FACILITY CODE |
|---|---|

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _____ calendar days after the date offers are due. (Insert any number equal to or greater than the minimum requirement stated in Item 13d. Failure to insert any number means the offer accepts the minimum stated in Item 13d.)

**AMOUNTS** ▶ One million three hundred twenty nine thousand eight hundred fifty three dollars and no cents

$1,329,853.00

18. The offeror agrees to furnish any required performance and payment bonds.

**19. ACKNOWLEDGMENT OF AMENDMENTS**
(The offeror acknowledges receipt of amendments to the solicitation -- give number and date of each)

| AMENDMENT NUMBER | 0001 | 0002 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DATE. | 6/22/16 | 6/20/16 | | | | | | |

| 20a. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print) | 20b. SIGNATURE | 20c. OFFER DATE |
|---|---|---|
| Joseph L. Barrech, Managing Partner | *(signature)* | 7/8/16 |

**AWARD (To be completed by Government)**

21. ITEMS ACCEPTED:
0001-0008

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| $1,115,240.00 | Please see attached |

| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 copies unless otherwise specified) | ITEM 27 | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO |
|---|---|---|
| | | ☐ 10 U.S.C. 2304(c) (   )   ☒ 41 U.S.C. 3304(a) (   1   ) |

| 26. ADMINISTERED BY | 4PQPA | 27. PAYMENT WILL BE MADE BY |
|---|---|---|
| Section A<br>77 FORSYTH ST SW<br>ATLANTA, GA 30303-3490 United States | | FSS PAYMENT BRANCH<br>P.O. BOX 17181<br>FORT WORTH, TX 76102-0181 |

**CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE**

| ☒ 28. NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ___1___ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract. | ☐ 29. AWARD (Contractor is not required to sign this document.) Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary. |
|---|---|

| 30a. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN (Type or print) | 31a. NAME OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Joseph L. Barrechi   Managing Partner | Sue Kaiser |

| 30b. SIGNATURE | 30c. DATE | 31b. UNITED STATES OF AMERICA | 31c. DATE |
|---|---|---|---|
| *(signature)* | 9/26/16 | BY *(signature)* Sue Kaiser | 9/26/16 |

STANDARD FORM 1442 (REV. 6/2014) BACK

Task Order GS-P-04-16-EX-7456
Design-Build Services
Roof Replacement, Lower and Upper Roofs
Claude Pepper Federal Building Miami, FL

GSA accepts Contractor's Proposal (BES Design/Build, LLC) dated July 08, 2016, in response to Request for Proposal (RFP) GS-P-04-16-EX-7084 to provide Design-Build Services for Roof Replacement, Lower and Upper Roofs, as well as and Lightening Protection at the Claude Pepper Federal Building Miami, FL.

This is a Firm Fixed-Price Task Order written against the terms and conditions of the Indefinite Delivery/Indefinite Quantity (IDIQ) Contract GS-04P-15-EZ-D-0024 between BES Design/Build, LLC and GSA PBS Region 4.

Location:

Claude Pepper Federal Building
51 SW 1st Avenue
Miami, FL

Attachments:

1.  Revised Statement of Work, entitled: Statement of Work to Replace and Improve Roof Cover Systems at the Claude Pepper Federal Office Building, Miami, Florida, Dated 06/22/1026, 28 pages

2.  General Wage Decision No. FL160027 08/05/2016 FL27, Miami-Dade County in Florida

Amendments 0001 through 0002 are hereby incorporated into subject Task Order.

Liquidated Damages shall be calculated at $202.29 per calendar day.

Period of Performance: Two Hundred Ten (210) Calendar Days after issuance of the Notice to Proceed.

Insurance: Insurance Certificate is required within ten (10) days after award.

Bonds: Performance and Payment Bonds. -- Within the next ten (10) days, you are requested to obtain and submit to this office Performance and Payment Bonds in the amount of 100 percent of the contract award amount. Submit Bonds on Standard Form 25 and 25A. Please Note: The execution date of the bonds must be the same as or later than the contract award date. The contract award date is October 01, 2016. Additionally, you are required to provide evidence of the required insurance coverage as specified in Task Order GS-P-04-16-EX-7456. Receipt and acceptable bonds and insurance are prerequisites to issuance of Notice to Proceed.

## SF1442 List of Accounting Strings

| Accounting String | Amount Obligated |
|---|---|
| EN-GS-P-04-16-EX-7456.2016.192X.04.P0440001.PG54.PG413.N20.RFL11221.FL0061ZZ.092.....RFL11221FL0061Z Z.CIPIMP.1.. | $1,042,756.00 |
| EN-GS-P-04-16-EX-7456.2016.192X.04.P0440001.PG54.PG211.N20.RFL11221.FL0061ZZ.092.....RFL11221FL0061Z Z.CIPIMP.1.. | $72,484.00 |

| | | | | PAGE | OF |
|---|---|---|---|---|---|
| | | | | 4 | 7 |

| ITEM NO., FORM OR STOCK NUMBER | DESCRIPTION OF ARTICLES OR SERVICES | QUAN-TITY | UNIT OF ISSUE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Roof Replacement - Design Services - Base 4PT 9-26-16: funds committal Claude Pepper FB (FL0061ZZ) 51 51 SW 1st Ave Miami, FL 33130 Roof Replacement (RFL11221) Provide DESIGN services as outlined in the GSA Statement of work, dated June 22, 2016,. EN-GS-P-04-16-EX-7456.2016.192X .04.P0440001.PG54.PG211.N20 .RFL11221.FL0061ZZ.092.... .RFL11221FL0061ZZ.CIPIMP.1.. Obligated: $56,469.00 PoP: 10/10/2016 - 07/28/2017 | 1 | LS | $56,469.00 | $56,469.00 |
| 0002 | Roof Replacement - Construction Services - Base 4PT 9-26-16: funds committal ──── Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130 Roof Replacement (RFL11221) Provide CONSTRUCTION services as outlined in the GSA Statement of work, dated June 22, 2016,. EN-GS-P-04-16-EX-7456.2016.192X .04.P0440001.PG54.PG413.N20 .RFL11221.FL0061ZZ.092.... | 1 | LS | $865,182.00 | $865,182.00 |

GENERAL SERVICES ADMINISTRATION

| | | | PAGE 5 | OF 7 | |
|---|---|---|---|---|---|
| ITEM NO., FORM OR STOCK NUMBER | DESCRIPTION OF ARTICLES OR SERVICES | QUAN-TITY | UNIT OF ISSUE | UNIT PRICE | AMOUNT |
| | .RFL11221FL0061ZZ.CIPIMP.1.. Obligated: $865,182.00 | | | | |
| | PoP: 10/10/2016 - 07/28/2017 | | | | |
| 0003 | Roof Replacement - Design Services - Option 3 4PT 9-26-16: funds committal -------------- ---------------------------- ------------- Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide DESIGN Services for Option #3 as outlined in the GSA Statement of work, dated June 22, 2016.. EN-GS-P-04-16-EX-7456.2016.192X .04.P0440001.PG54.PG211.N20 .RFL11221.FL0061ZZ.092.... .RFL11221FL0061ZZ.CIPIMP.1.. Obligated: $16,015.00 | 1 | LS | $16,015.00 | $16,015.00 |
| | PoP: 10/10/2016 - 07/28/2017 | | | | |
| 0004 | Roof Replacement - Construction Services - Option 3 4PT 9-26-16: funds committal --------------------------------- ----- Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide CONSTRUCTION | 1 | LS | $177,574.00 | $177,574.00 |

GENERAL SERVICES ADMINISTRATION

| | | | | PAGE | OF |
| | | | | 6 | 7 |

| ITEM NO., FORM OR STOCK NUMBER | DESCRIPTION OF ARTICLES OR SERVICES | QUAN-TITY | UNIT OF ISSUE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | services for Option 3 as outlined in the GSA Statement of work, dated June 22, 2016.. EN-GS-P-04-16-EX-7456.2016.192X .04.P0440001.PG54.PG413.N20 .RFL11221.FL0061ZZ.092.... .RFL11221FL0061ZZ.CIPIMP.1.. Obligated: $177,574.00 PoP: 10/10/2016 - 07/28/2017 | | | | |
| 0005 | Roof Replacement - Construction Services - Contract Option #1 Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide CONSTRUCTION services as outlined in the GSA Statement of work, dated June 22, 2016..Estimated Unit Price 159,140 PoP: 10/10/2016 - 07/28/2017 | 0 | LS | $159,140.00 | $0.00 |
| 0006 | Roof Replacement - Design Services - Contract Option #1 Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide DESIGN services as outlined in the GSA Statement of work, dated June 22, 2016..Estimated Unit Price 9,740 PoP: 10/10/2016 - 07/28/2017 | 0 | LS | $9,740.00 | $0.00 |
| 0007 | | 0 | LS | $2,116.00 | $0.00 |

GENERAL SERVICES ADMINISTRATION

| | | | | PAGE | OF |
|---|---|---|---|---|---|
| | | | | 7 | 7 |

| ITEM NO., FORM OR STOCK NUMBER | DESCRIPTION OF ARTICLES OR SERVICES | QUAN-TITY | UNIT OF ISSUE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | Roof Replacement - Design Services - Contract Option #2 Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide DESIGN services as outlined in the GSA Statement of work, dated June 22, 2016..Estimated Unit Price 2,116 PoP: 10/10/2016 - 07/28/2017 | | | | |
| 0008 | Roof Replacement - Construction Services - Contract Option #2 Claude Pepper FB (FL0061ZZ) 51 SW 1st Ave Miami, FL 33130  Roof Replacement (RFL11221)  Provide CONSTRUCTION services as outlined in the GSA Statement of work, dated June 22, 2016..Estimated Unit Price 43,617 PoP: 10/10/2016 - 07/28/2017 | 0 | LS | $43,617.00 | $0.00 |

GENERAL SERVICES ADMINISTRATION



**DESIGN/BUILD**

# Contract
# SC-16529-002

BES Design Build, LLC
766 Middle St.
Fairhope, Alabama 36532
Phone: (251) 990-8778
Fax: (251) 990-3716

Project: 16529 - FL - Miami - Roof Replacement D/B Claude Pepper
Federal Building - GS-P-04-16-EX-7466
51 SW 1 Ave
Miami, Florida 33130

## Salomon Roofing and Construction

| | | | |
|---|---|---|---|
| **DATE CREATED:** | 10/28/2016 | | |
| **CONTRACT COMPANY:** | Salomon Roofing and Construction<br>689 West 26th Street<br>Hialeah, Florida 33010<br>Phone: (305) 883-1856<br>Fax: (305) 883-6684 | **CREATED BY:** | Jack Grimes (BES Design Build, Charleston)<br>1941 Savage Road, Suite 300-E<br>Charleston, South Carolina 29407 |

| | | | |
|---|---|---|---|
| **CONTRACT STATUS:** | Draft | **EXECUTED:** | No |
| **START DATE:** | 11/01/ 2016 | **ESTIMATED COMPLETION DATE:** | 09/01/ 2017 |
| **SIGNED CONTRACT RECEIVED DATE:** | | **ACTUAL COMPLETION DATE:** | |
| **DEFAULT RETAINAGE:** | | | |

**DESCRIPTION:**

Salomon Roofing and Construction Proposal #199237

Provide labor, materials and equipment to perform the following:
SERVICE TO BE PROVIDED BY CONTRACTOR:

1. Furnish and Install 20 Year Garland Modified Bitumen Roofing System
2. Furnish and Install Shop Fabricated Aluminum Metal System

Base Bid: $611,650.00
Alternate #3: $139,767.00
Total: $751,417.00

Other alternatives available as required.

**INCLUSIONS:**
INCLUSIONS:
Certified Weekly Payroll -- certifiedpayroll@besdesignbuild.com
Progress Payments are due to BESDB by the 20th of each period, accountspayable@besdesignbuild.com
OHSA 10/30
Davis-Bacon Wages
Buy American Act
Bond
Taxes

**EXCLUSIONS:**

**ATTACHMENTS:**
BES Design - Cluade Pepper Re-roof - Downtown Miami - proposal - Cold Ap... (1).pdf

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|
| 1 | 07 - Thermal and Moisture Protection | NEW ROOF | Commitment | $751,417.00 |
| | | | **Grand Total:** | **$751,417.00** |

Printed On: 10/31/2016  11 :29 AM



**DESIGN/BUILD**

**Contract**
**SC-16529-002**

16.3     **COMMON TEMPORARY SERVICES.** The following "Project" common temporary services and/or facilities are for the use of all project personnel and shall be furnished as herein below noted:

By this Subcontractor; including but not limited to: Phones.

By others; water, electricity. Water and electricity to be provided at the facility, no remote capabilities (i.e., generators) to be provided.

16.4     **OTHER SPECIAL PROVISIONS.**

**1. Certified Payroll weekly**
**Certified Payroll Instructions:**
Subcontractor is to provide certified payroll copies to the Contractor on a weekly basis beginning with the first day worked and shall continue until the Subcontractors work is complete. Subcontractor shall distribute to the following:

- 1 email copy of certified payroll and invoice to jbanach@besdesignbuild.com; atapia@besdesignbuild.com
- Pay Application can be emailed to: accountspayable@besdesignbuild.com
- 1 original with the invoice to the billing location listed below:
  **BES Design/Build LLC**
  **Attn: Accounts Payable**
  **PO Box 2263**
  **Fairhope, AL 36533**

If the Subcontractor fails to provide all certified payrolls and statement of compliance as required under this subcontracts Section 1 wage determination clause, Contractor shall withhold payments to the Subcontractor until such violations have been corrected. Certified Payroll and Statement of Compliance of certified payroll can be submitted on the standard Government WH-347 Form which can be found at the US Department of Labor Website.

1. All submittals are to be received by BES Design/Build LLC, within Ten (10) working days of receipt of a Notice to Proceed.

2. Cancellation clause on the Certificate of Insurance shall read: "Should any of the above described policies be cancelled or have any material changes adversely affecting The BES Design/Build LLC, interest before the expiration date thereof, the issuing company will mail 30 days written notice to the certificate holder". The BES Design/Build, LLC will be named as additional insured. This certificate should be job specific.

16.5     **CONTRACT DOCUMENTS**
1. Scope of Work Proposal
2. Project RFP
3. Standard Form 1413
4. Subcontractor Safety Requirements Letter
5. Activity Hazard Analysis Form

The terms and conditions of this contract are not to be changed either manual or electronic. Any changes to the official printed language of this contract shall void the entire agreement. Attachments are for reference only and do not release the subcontractor noted in this contract from the requirements of this contract or the requirements of the flow-down clauses of the prime contract. **IN WITNESS WHEREOF,** the parties hereto have executed this Agreement under seal, the day and year first above written

**BES Design Build, LLC**
**706 Middle St.**
**Fairhope, Alabama 36532**

**Salomon Roofing and Construction**
**689 West 20th Street**
**Hialeah,, Florida 33010**

| | |
|---|---|
| SIGNATURE | DATE |

SIGNATURE        11/30/16        DATE

| | |
|---|---|
| SIGNATURE | DATE |

## STATEMENT AND ACKNOWLEDGMENT

| OMB Control Number: 9000-0014 |
| Expiration Date: 12/31/2017 |

PAPERWORK REDUCTION ACT STATEMENT:  Public reporting burden for this collection of information is estimated to average .05 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspects of this collection of information, including suggestions for reducing this burden, to U.S. General Services Administration, Regulatory Secretariat (MVCB)/IC 9000-0014, Office of Governmentwide Acquisition Policy, 1800 F Street, NW, Washington, DC 20405.

### PART I - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER | | |
|---|---|---|---|---|
| GS-P-04-16-EX-7456 | 10/28/2016 | SC-16529-002 | | |

| 4. PRIME CONTRACTOR | | 5. SUBCONTRACTOR | | |
|---|---|---|---|---|
| a. NAME | | a. NAME | | |
| BES Design/Build, LLC | | Salomon Roofing and Construction | | |
| b. STREET ADDRESS | | b. STREET ADDRESS | | |
| 766 Middle Street | | 389 West 26th Street | | |
| c. CITY | d. STATE | e. ZIP CODE | c. CITY | d. STATE | e. ZIP CODE |
| Fairhope | AL | 36532 | Hialeah | FL | 33010 |

6. The prime contract  [X] does,  [ ] does not contain the clause entitled "Contract Work Hours and Safety Standards Act -- Overtime Compensation."

7. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on the date shown in Item 2 to the subcontractor identified in Item 5 by the following firm:

a. NAME OF AWARDING FIRM

BES Design/Build, LLC

b. DESCRIPTION OF WORK BY SUBCONTRACTOR

Furnish and install Roof per all plans, specifications and amendments.

| 8. PROJECT | 9. LOCATION | |
|---|---|---|
| Roof Replacement D/B Claude Pepper Federal Building | Miami, FL | |

| 10a. NAME OF PERSON SIGNING | 11. BY (Signature) | 12. DATE SIGNED |
|---|---|---|
| Helen H Turnage | | |
| 10b. TITLE OF PERSON SIGNING | | |
| Contract and Administration Manager | | |

### PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

13. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

Contract Work Hours and Safety Standards Act - Overtime Compensation
   (If included in prime contract see Block 6)
Payrolls and Basic Records
Withholding of Funds
Disputes Concerning Labor Standards
Compliance with Construction Wage Rate Requirements
   and Related Regulations

Construction Wage Rate Requirements
Apprentices and Trainees
Compliance with Copeland Act Requirements
Subcontracts (Labor Standards)
Contract Termination - Debarment
Certification of Eligibility
Buy American Statute – Construction Materials

14. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| A | C |
|---|---|
| B | D |

| 15a. NAME OF PERSON SIGNING | 16. BY (Signature) | 17. DATE SIGNED |
|---|---|---|
| SALOMON SUSI | | 1/25/17 |
| 15b. TITLE OF PERSON SIGNING | | |
| PRESIDENT | | |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1413 (REV. 4/2013)
Prescribed by GSA/FAR (48 CFR) 53.222(e)

# EXHIBIT 2

Bond No.  B10 028 938

| **PAYMENT BOND** (See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br><br>September 27, 2016 | **OMB Control Number: 9000-0045**<br>**Expiration Date: 7/31/2019** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address)<br><br>BES Design/Build, LLC<br>766 Middle Street<br>Fairhope, AL  36532 | TYPE OF ORGANIZATION ("X" one)<br><br>☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE<br><br>☐ CORPORATION  ☒ OTHER (Specify) LLC<br><br>STATE OF INCORPORATION<br><br>AL |
|---|---|

| SURETY(IES) (Name(s) and business address(es))<br><br>Aegis Security Insurance Company<br>P. O. Box 3153<br>Harrisburg, PA  17105 | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 1 | 115 | 240 | 00 |
| | CONTRACT DATE<br>9/26/2016 | | CONTRACT NUMBER<br>GS-P-04-16-EX-7456 | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| BES Design/Build, LLC | | | PRINCIPAL | | | |
|---|---|---|---|---|---|---|
| SIGNATURE(S) | 1. *[signature]* | 2. | | (Seal) | 3. | (Seal) |
| NAME(S) & TITLE(S) (Typed) | 1. Wm. Walter Bolton<br>Partner | 2. | | | 3. | Corporate Seal |

| | INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | | 2. | |

| CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Aegis Security Insurance Company<br>P. O. Box 3153 , Harrisburg, PA  17105 | STATE OF INCORPORATION<br>PA | LIABILITY LIMIT<br>$ $5,644,000 |
| | SIGNATURE(S) | 1. *[signature]* | 2. *[signature]* | *[seal]* |
| | NAME(S) & TITLE(S) (Typed) | 1. Richard V. Dobbs, Jr.   , Attorney-in-Fact | 2. Erika Brett, Witness | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

**STANDARD FORM 25A (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

## CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A (REV. 8/2016) BACK**

# EXHIBIT 3

**NOTICE OF NONPAYMENT**
(BES Design/Build, LLC, as Principal)
Bond No.: B10 028 938

Date: January 11, 2018

To:    Via Certified Mail (Return Receipt Requested)
        Aegis Security Insurance Company
        4507 North Front Street, Suite 200
        Harrisburg, PA 17110

To:    Via Certified Mail (Return Receipt Requested)
        Aegis Security Insurance Company
        Attn: Richard V. Dobbs, Jr., Attorney-in-Fact
        P.O. Box 3153
        Harrisburg, PA 17105

To:    Via Certified Mail (Return Receipt Requested)
        U.S. General Services Administration
        Attn: PBS, Acquisition Division
        77 Forsyth Street
        Atlanta, GA 30303

      Salomon Construction and Roofing, Corp. d/b/a Salomon Roofing & Construction ("Salomon"), notifies you that it has furnished labor, materials and services for the replacement of the roof on the Claude Pepper Federal Office Building, located at 51 SW 1st Avenue, Miami, Florida 33130 ("Project"), under an order given by BES Design/Build, LLC ("BES"). Despite Salomon's performance of its obligations at the Project, BES has not paid Salomon an outstanding balance of $222,006.37 to which Salomon is entitled. The last of the labor, services or materials was furnished by Salomon on December 19, 2017.

                          Salomon Construction and Roofing, Corp.

                          By:    *SALOMON SUSI*

                          Its:    *PRESIDENT*

cc:    BES Design/Build, LLC
        Attn: Walter Bolton
        766 Middle Street
        Fairhope, AL 36532